UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARGARET CONNELLY, ) | |
| ) | Case No. 19-cv-07894 |
| Plaintiff, ) | |
| ) | Judge Sharon Johnson Coleman |
| v. ) | |
| ) | |
| COOK COUNTY ASSESSOR'S OFFICE; ) | |
| FRITZ KAEGI, individually, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is defendants' partial motion to dismiss plaintiff's first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, defendants' partial motion to dismiss [38] is granted in part without prejudice and denied in part.

**Background**

On March 22, 2021, the Court granted in part without prejudice and denied in part defendants' Rule 12(b)(6) motion to dismiss plaintiff's three-count complaint. In particular, the Court dismissed defendant Cook County, the municipality, as a named defendant in the lawsuit due to Cook County's inability to be held liable for the actions of Cook County Assessor Fritz Kaegi. The Court granted plaintiff leave to file an amended complaint identifying the proper Cook County entity. On April 15, 2021, plaintiff filed a First Amended Complaint, adding the Cook County Assessor's Office ("CCAO") as a defendant. Kaegi remains a defendant. Plaintiff alleges that the CCAO and Kaegi wrongfully terminated her employment in violation of her First Amendment right to free speech and right to associate under 42 U.S.C. § 1983. She also asserts a claim pursuant to *Monell v. Department of Social Services.* 436 U.S. 658, 98 S. Ct. 2018, 56 L.E.2d 611 (1978).

Defendants CCAO and Kaegi have brought a partial motion to dismiss the First Amended Complaint pursuant to Rule 12(b)(6) on two grounds: (1) the CCAO is a non-suable entity; and (2) plaintiff's *Monell* claim is insufficiently pled.[1]

**Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529, 131 S. Ct. 1289, 179 L. Ed. 2d 233 (2011). When considering dismissal of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam). To survive a motion to dismiss, a plaintiff must "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

**Discussion**

Defendants claim that the CCAO should be dismissed from this case because it is a non-suable entity. Additionally, defendants argue that plaintiff has insufficiently pleaded her *Monell* claim. The Court addresses each argument in turn.

---

[1] In their motion, defendants state in a footnote that the CCAO has not been served. (Dkt. 38 at 1 n.1.) On reply, defendants again mention this point in a footnote and add (in the body of their brief) that the CCAO has still not been served with a summons and complaint "which is improper under Federal Rule of Civil Procedure 4." (Dkt. 44 at 1–2.) To the extent that defendants also seek dismissal on the basis of improper service, they have failed to sufficiently make the argument. Cursory arguments made in footnotes and arguments made for the first time in reply briefs are waived. *See White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021); *Chi. Joe's Tea Room, LLC v. Vill. of Broadview*, 894 F.3d 807, 817 (7th Cir. 2018).

*Whether the CCAO Is a Suable Entity*

Federal Rule of Civil Procedure 17(b) provides that, for parties other than individuals and corporations, the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(1)-(3); *see also Magnuson v. Cassarella*, 812 F. Supp. 824, 827 (N.D. Ill. 1992) (Aspen, J.) ("The federal courts look to state law to determine if a defendant is amenable to suit."). Under Illinois law, to be a suable entity, "a defendant must have a legal existence, either natural or artificial." *Magnuson*, 812 F. Supp. at 827 (citing *Jackson v. Vill. of Rosemont*, 180 Ill. App. 3d 932, 937–38, 536 N.E.2d 720, 723 (1st Dist. 1988)).

Here, neither side has pointed the Court to an opinion directly addressing whether the CCAO is a suable entity under Illinois law, nor has this Court located any relevant case law on this specific point. Defendants argue that the CCAO is not a suable entity, relying on cases where the Cook County Clerk's Office and the Cook County Sheriff's Office were found to be improper defendants. Plaintiff responds that, because defendants "have agreed to the entry of Consent Decrees regulating the CCAO's conduct," they have effectively admitted that the CCAO is a suable entity, and point to state court cases in which the CCAO was named as a defendant. (Dkt. 42 at 4–6.) Again, the cases cited by the parties do not directly discuss whether the CCAO is a suable entity. Nonetheless, case law involving a similarly structured entity—the Cook County Sheriff's Office—informs the Court's decision in this case.

Under Illinois law, the Sheriff is an independently elected constitutional officer. Ill. Const. Art. VII, § 4(c); *see also DeGenova v. Sheriff of DuPage Cnty.*, 209 F.3d 973, 976 n.2 (7th Cir. 2000) (citations omitted). So too is the Cook County Assessor. Ill. Const. Art. VII, § 4(c). Whether a sheriff's office is a legal entity capable of being sued has produced mixed results in this District. *See Zimny v. Cook Cnty. Sheriff's Office*, No. 12 C 5963, 2014 WL 4555302, at *6 (N.D. Ill. Sep. 15, 2014) (Ellis, J.), *vacated on reconsideration on other grounds*, 2014 WL 7176623 (N.D. Ill. Dec. 15, 2014)

(explaining that the Cook County Sheriff's Office "sometimes, but not always" seeks dismissal "because it is not a legal entity capable of being sued," and noting that numerous cases in this District have "proceed[ed] against the Sheriff's Office past the motion to dismiss stage"). Some courts have concluded that the proper defendant is the sheriff in his official capacity, rather than the sheriff's office or department. *See, e.g.*, *Whitted v. Eve Cook Cnty. Sheriff's Office*, 12 C 2461, 2013 WL 4840488, at *2 (N.D. Ill. Sept. 10, 2013) (St. Eve., J.) (denying defendants' motions to dismiss "based on the parties' oversight as to the proper, suable Defendant" but noting "the proper Defendant should be the Cook County Sheriff"); *see also Robinson v. Cook Cnty. Sheriff's Dep't*, No. 14 C 9064, 2015 WL 2375390, at *2 (N.D. Ill. May 14, 2015) (Aspen, J.) ("It is well-settled that the Cook County Sheriff's Department is not a separate legal entity under Illinois law and cannot be sued directly."). These cases, and others, rely on *Castillo v. Cook County Mail Room Department*, 990 F.2d 304 (7th Cir. 1993). In *Castillo*, the plaintiff named the "Mail Room Dept." at the "Cook County Jail" as a defendant. *Id.* at 307. The Seventh Circuit explained that "[t]he Cook County Department of Corrections is not a suable entity," and thus "[i]t follow[ed] that the mail room, as a subdivision of the Department of Corrections, is not subject to suit either."[2] *Id.*

Other courts in this District have held that a sheriff's office is a suable entity. *See, e.g.*, *Leinenweber v. DuPage Cnty.*, No. 08 CV 3124, 2009 WL 458622, at *3 (N.D. Ill. Feb. 23, 2009) (Manning, J.) (rejecting the argument that the DuPage County Sheriff's Office is not a legal entity because it is "not well-founded, as numerous courts have permitted claims to proceed against the office of a county sheriff"); *see also Young v. City of Chi.*, No. 13 C 5651, 2017 WL 25170, at *4 (N.D. Ill. Jan. 3, 2017) (Gottschall, J.) (noting that, unlike the Chicago Police Department, which has no

---

[2] Similarly, defendants cite *Suarez v. Cook County Clerk's Office*, No. 01 C 5830, 2002 WL 31833686 (N.D. Ill. Dec. 17, 2002) (Andersen, J.), which held that the Cook County Clerk's Office is a non-suable entity. But the cases *Suarez* relies upon held that, given how Illinois statutes organized the Public Defender's Office, that office was not a suable entity. *See Clay v. Friedman*, 541 F. Supp. 500, 503 (N.D. Ill. 1982) (Shadur, J.) and *Woidtke v. Cnty. of St. Clair*, 02-CV-225, 2002 WL 31553528, at *3 (S.D. Ill. Nov. 8, 2002).

separate legal existence apart from the City of Chicago, a county sheriff's office has a legal existence separate from the county and state) (citation omitted). Though courts sometimes grapple with the decision to permit suits against an elected county official versus the entity itself, many have explained that the distinction makes little difference where an officer is sued in his official capacity because "[a]n official capacity suit is the same as a suit against the entity of which the officer is an agent." *DeGenova*, 209 F.3d at 974 n.1 (citation omitted); *Leinenweber*, 2009 WL 458622, at *3.[3]

As this Court explained in its March 2021 opinion, just as sheriffs are independently elected officials responsible for their office, the assessor is an independently elected official responsible for his office. The assessor answers to the electorate, not to the Cook County Board of Commissioners. Indeed, as the Seventh Circuit noted in *DeGenova*, "Within the sheriff's prescribed range of activity, he and not some legislative-type body is at the apex of the governmental pyramid." *DeGenova*, 209 F.3d at 976 n.2 (quoting *Hvorcik v. Sheahan*, 847 F. Supp. 1414, 1417 n.7 (N.D. Ill. 1994) (Shadur, J.)). The Seventh Circuit concluded that "the Sheriff's office has a legal existence separate from the county and the State, and is thus a suable entity." *Id.*; *see also Mitter v. Cnty. of DuPage*, No. 13 C 841, 2013 WL 5951810, at *4 (N.D. Ill. Nov. 7, 2013) (Feinerman, J.) ("[s]ettled precedent" that a sheriff's office is a suable entity).

The Court finds that the above analysis of the suability of the sheriff's office is sufficiently similar to that of the CCAO, and thus the motion to dismiss the CCAO on the ground that it cannot be sued is denied.

---

[3] On reply, defendants argue that if the Court finds that the CCAO is a suable entity, the Court should dismiss the § 1983 claims against Kaegi as duplicative. (Dkt. 44 at 4.) Kaegi, however, has only been named in his *individual* capacity in this case. As noted above, the case law (including that to which defendants cite) contemplates duplication where individual defendants are sued in their *official* capacity. *See, e.g., Kiser v. Naperville Cmty. Unit*, 227 F. Supp. 2d 954, 960–61 (N.D. Ill. 2002) (Gottschall, J.) (agreeing with individual defendants, who were each sued only in their official capacity, that "[b]ecause official capacity suits are equivalent to suing the entity itself . . . naming them in their official capacities serves no legitimate purpose").

5

Additionally, because the CCAO remains in the case, Cook County the municipality is now a necessary party in the case. In an answer to a certified question from the Seventh Circuit, the Illinois Supreme Court determined that, "[b]ecause the office of the sheriff is funded by the county, the county is therefore required to pay a judgment entered against a sheriff's office in an official capacity." *Carver v. Sheriff of LaSalle Cnty.*, 203 Ill.2d 497, 499, 787 N.E.2d 127, 129 (2003). The Seventh Circuit held that the Supreme Court of Illinois's answer "implie[d] an additional point of federal law: that a county in Illinois is a necessary party in any suit seeking damages from an independently elected county officer (sheriff, assessor, clerk of court, and so on) in an official capacity. Because state law requires the county to pay, federal law deems it an indispensable party to the litigation." *Carver v. Sheriff of LaSalle Cnty.*, 324 F.3d 947, 948 (7th Cir. 2003) (internal citation omitted). Cook County must therefore be joined as a defendant, not based on its participation in any alleged conduct, but "solely in its capacity as indemnitor" of the CCAO. *Askew v. Sheriff of Cook Cnty.*, 568 F.3d 632, 636 (7th Cir. 2009); *Wuerffel v. Cook Cnty. Sheriff's Office*, 14 C 3990, 2016 WL 1660497, at *3 (N.D. Ill. Apr. 27, 2016) (Kocoras, J.) (citation omitted).

*Monell Claim*

Defendants also argue that plaintiff has failed to adequately plead a *Monell* claim.[4] To state a *Monell* claim against a municipality or comparable entity, a plaintiff must allege facts sufficient to show that the alleged constitutional violation was caused by "(1) an express municipal policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) [an act] by a person with final policymaking authority." *Molloy v. Acero Charter Schs., Inc.*, No. 19 C 785, 2019 WL 5101503, at *5 (N.D. Ill. Oct. 10, 2019) (Feinerman,

---

[4] In their motion to dismiss, defendants argue that plaintiff's First Amended Complaint is unclear as to whether plaintiff intended to assert a *Monell* claim against the CCAO, Kaegi, or both. Plaintiff's response clarifies that her *Monell* claim is brought only against the CCAO. (Dkt. 42 at 3.)

J.) (citing *Gable v. City of Chi.*, 296 F.3d 531, 537 (7th Cir. 2002)). "In addition to showing that the municipality acted culpably in one of those three ways, the plaintiff must allege causation, meaning that the municipality, through its deliberate conduct, . . . was the 'moving force' behind the injury alleged." *Id.* (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 1388, 137 L.Ed.2d 626 (1997)) (emphasis and internal quotation marks omitted). In her response, plaintiff explains that she is proceeding under a "final policymaker" theory and argues that she has carried her burden to establish a constitutional deprivation caused by an individual with final policymaking authority. On reply, defendants contend that plaintiff's allegations fall short because (1) whether a person has final policymaking authority turns on state law and plaintiff "fails to provide any state law support" for her assertion that Kaegi was the final policymaker for the CCAO with respect to terminating employees; and (2) plaintiff attempts to rely on facts "alleg[ing] a widespread practice or policy" in support of her final policymaker theory. (Dkt. 44 at 2–3.)

"State law informs who legally constitutes a final policymaker." *Walker v. Bd. of Educ. of City of Chi.*, No. 19 CV 4115, 2021 WL 1143517, at *4 (N.D. Ill. Mar. 25, 2021) (Blakey, J.) (citing *Burger v. Cnty. of Macon*, 942 F.3d 372, 375 (7th Cir. 2019)). "Final policymaking authority may be granted directly by statute or delegated or ratified by an official having policymaking authority." *Kujawski v. Bd. of Comm'rs of Bartholomew Cnty.*, 183 F.3d 734, 737 (7th Cir. 1999). A person has final policymaking authority for employment purposes if he has "authority to set policy for hiring and firing." *Id.* at 739 ("There must be a delegation of authority to set policy for hiring and firing, not a delegation of only the final authority to hire and fire."); *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 676 (7th Cir. 2009) ("It is a well-established principle that the mere unreviewed discretion to make hiring and firing decisions does not amount to policymaking authority.") (internal quotation marks and citations omitted).

Plaintiff's First Amended Complaint alleges that Kaegi was sworn in as the Cook County Assessor on December 3, 2018, and, that same day, Kaegi "began to terminate those employees of the CCAO that were hired by Mr. Berrios, engaged in political speech in favor of Mr. Berrios and/or were known to associate politically with Mr. Berrios and/or his campaign." (Dkt. 37, Compl. at ¶ 12.) Plaintiff alleges that her own termination was due to her being hired by Berrios "and thus considered to be a political supporter of his," as well as her political speech in favor of and political association with Berrios. (*Id.* at ¶ 16.) The complaint also alleges that "Kaegi was the final policymaker for the CCAO with respect to terminating employees," and that Kaegi's acts "constitute a policy, custom, and practice of the CCAO to terminate those employees that engage in political speech or association in favor of Mr. Berrios." (*Id.* at ¶¶ 38–39.) Plaintiff alleges that each of Kaegi's acts with respect to the CCAO "constitutes a policy of the CCAO," and that, as a result of the "policy, custom and practice espoused by the CCAO to retaliate against political supports of Mr. Berrios," she suffered a deprivation of rights. (*Id.* at ¶¶ 40–41.)

At the motion to dismiss stage, plaintiff must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. As this Court stated in its March 2021 opinion, Kaegi is plausibly the final policymaker for the CCAO. However, although the First Amended Complaint concludes that Kaegi "was the final policymaker for the CCAO with respect to terminating employees," it alleges no facts to support this claim. In other words, beyond stating that "Kaegi was the final policymaker" for the CCAO's termination decisions, the complaint lacks sufficient facts to allege that Kaegi possessed or was delegated final policymaking authority for termination decisions. Such facts are necessary to permit the inference that Kaegi indeed had final policymaking authority with respect to firing employees. *Cf. Thuet v. Chi. Pub. Schs.*, No. 20 C 1369, 2020 WL 5702195, at *4 (N.D. Ill. Sept. 24, 2020) (Feinerman, J.) (plaintiff adequately alleged that Chicago Public Schools' CEO was the final

8

policymaker for hiring and firing where plaintiff referenced applicable guidelines, which "yield[ed] a permissible inference that [the CEO] not only made hiring and firing decisions in individual cases, but also set policy for termination and DNH [or 'do not hire'] decisions"); *see also Kristofek v. Vill. of Orland Hills*, 712 F.3d 979, 987 (7th Cir. 2013) (finding that plaintiff stated, "albeit barely," a plausible claim that a police chief "had at least *de facto* authority to set policy for hiring and firing," where the complaint suggested he was "fully in charge of the police department and that his firing decisions were not reviewed"). Defendants' motion to dismiss is, therefore, granted without prejudice as to plaintiff's *Monell* claim. Plaintiff has leave to amend her complaint to include sufficient factual allegations to proceed under a "final policymaker" theory.

**Conclusion**

Based on the foregoing discussion, defendants' partial motion to dismiss [38] is granted in part without prejudice and denied in part. Defendants' motion to dismiss on the basis that the CCAO is not a suable entity is denied. Plaintiff's *Monell* claim is dismissed without prejudice and with leave to replead. By February 22, 2022, plaintiff may file an amended complaint to cure the deficiencies described in this opinion. The portion of defendants' motion that requests a stay of the deadline to answer the remaining claims in the First Amended Complaint until after the instant decision [38] is stricken as moot.

IT IS SO ORDERED.

Date: 02/01/2022

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge