IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **MARGARET CONNELLY,** | ) | |
| | ) | |
| Plaintiff, | ) | No. 19 CV 7894 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| **COOK COUNTY ASSESSOR'S OFFICE and FRITZ KAEGI,** individually, | ) ) ) | Magistrate Judge Jeffrey I. Cummings |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendants Cook County Assessor's Office and Fritz Kaegi (who is sued in his individual capacity) have filed a motion for a protective order pursuant to Federal Rules of Civil Procedure 26 and 37 to bar plaintiff Margaret Connelly from taking Kaegi's deposition. (Dckt. #75). Plaintiff has responded and defendants have filed a reply. (Dckt. ##78 & 82). For the reasons stated below, defendants' motion is denied and Kaegi must be produced for deposition on or before January 5, 2023 (the current close of fact discovery), under the conditions specified in this opinion.

I.      BACKGROUND

In her second amended complaint ("Complaint"), plaintiff alleges that she distributed campaign literature and acted as a poll watcher in 2010 for Joseph Berrios (Kaegi's predecessor) during his successful campaign for Cook County Assessor. (Dckt. #51 at ¶9). In June 2011, plaintiff was hired by Berrios to serve as an executive assistant to Alfonso Sarro, the Director of Residential Valuation for the Assessor's Office. (*Id.*, at ¶¶10-11). Before and after plaintiff was

1

hired by Barrios, she volunteered at approximately fourteen fundraisers for Barrios between June 2011 and December 2018. (*Id.*, at ¶11).

In March 2018, Kaegi ran against Berrios in the Democratic primary election for Cook County Assessor and defeated him. (*Id.*, at ¶12). Kaegi subsequently defeated his Republican challenger in the 2018 general election and was sworn in to replace Barrios as the Cook County Assessor on December 3, 2018. (*Id.*, at ¶¶12-13). On that same day, Kaegi and his new administration terminated five to seven employees in the Assessor's Office. (*Id.*, at ¶¶13, 22; Dckt. #78 at 2, 6). Plaintiff was among the Assessor's Office employees terminated on December 3, 2018. (Dckt. #51, at ¶15).[1]

Kaegi subsequently stated in the "Cook County Assessor Kaegi 50 Day Report" that "on day one [December 3, 2018], we ended the employment of anyone in the assessor's office who received their job purely through favoritism or nepotism." (*Id.*, at ¶22; Dckt. #54 (Defendants' Answer to the Complaint) at ¶22 (admitting this allegation)). Kaegi was also quoted in a January 3, 2019 WTTW Chicago article asserting that "we've let go of all political appointees who were there exclusively due to patronage and nepotism" and his chief communications officer confirmed that "anybody linked to patronage and nepotism [is] gone." (Dckt. #51 at ¶21; Dckt. #54 (Defendants' Answer to the Complaint) at ¶21 (admitting these allegations)).

Plaintiff alleges that defendants' termination of her employment violated her First Amendment rights to free speech and free association. Plaintiff also alleges a *Monell* claim

---

[1] The memo that defendants provided to plaintiff in connection with her termination explained that defendants terminated plaintiff pursuant to a provision of the Assessor's Office's Employment Plan that granted the Assessor the right to terminate an executive assistant (such as plaintiff) when the Deputy or Director to whom the executive assistant was assigned is separated from employment with the Assessor's Office. (Dckt. #51 at ¶¶15-16). However, plaintiff alleges – and defendants admit – that the Director to whom plaintiff was assigned was *not* separated from the Assessor's Office at the time plaintiff was terminated. (Dckt. #51 at ¶14; Dckt. #54 at ¶14).

which asserts that Kaegi is a "final policymaker" for the Assessor's Office with respect to hiring, laying off, and terminating employees and that Kaegi's acts constitute a policy, custom, and practice of the Assessor's Office to terminate those employees who engaged in political speech or association in favor of Berrios. Plaintiff brought this lawsuit against both the Assessor's Office and Kaegi in his individual capacity.

Plaintiff served interrogatories on Kaegi in the spring of 2022. Kaegi, however, did not answer plaintiff's interrogatories. Instead, the interrogatories served on Kaegi were answered and verified by Sarah Garza Resnick, the Chief Deputy of the Assessor's Office, before being served on plaintiff on July 1, 2022. (*See* Dckt. #75-2). Plaintiff then noticed the deposition of Kaegi for November 3, 2022, at the office of plaintiff's counsel in Geneva, Illinois. (*See* Dckt. #75-1). Defendants thereafter filed this motion for a protective order to block plaintiff from taking Kaegi's deposition.

## II.  LEGAL STANDARD

Although "[a] party generally has the right to depose witnesses during discovery . . ., depositions of public officials create unique concerns." *Bless v. Cook Cnty. Sheriff's Off.*, 9 F.4th 565, 570 (7th Cir. 2021) (citation and internal quotation marks omitted). It is well-settled in this Circuit that public officials "should not have to spend their time giving depositions in cases arising out of the performance of their official duties unless there is some reason to believe that the deposition will produce or lead to admissible evidence." *Olivieri v. Rodriquez*, 122 F.3d 406, 409-10 (7th Cir. 1997); *Bless*, 9 F.4th at 571. To this end, "[c]ourts have not hesitated to block efforts to depose high-ranking officials where the officials do not have unique personal knowledge of the facts underlying the events that lead to the lawsuit in question." *Full Circle Villagebrook GP, LLC v. Protech 2004-D, LLC*, No. 20 C 7713, 2022 WL 16646418, at *4

(N.D.Ill. Nov. 2, 2022) (internal quotation marks omitted; citing cases). "On the other hand, if the official has discoverable information, the parties may not be deprived of that information simply because of the official's status." *Hobley v. Burge*, No. 03 C 3678, 2007 WL 551569, at *2 (N.D.Ill. Feb. 22, 2007) (citing *Clinton v. Jones*, 520 U.S. 681, 703-05 (1997)).

The "party seeking protection from discovery bears the burden of presenting 'a particular and specific demonstration of fact' as to the need for that protection" and "[a] strong showing is required before a party will be denied entirely the right to take a deposition." *City of Rockford v. Mallinckrodt ARD, Inc.*, No. 17-cv-50107, 2020 WL 1675593, at *2 (N.D.Ill. Apr. 6, 2020); *Boyd v. Lazer Spot, Inc.*, No. 19 C 8173, 2022 WL 2865881, at *5 (N.D.Ill. July 6, 2022) (same). Moreover, the burden of proof does not shift to the party seeking discovery simply because a party seeks to prevent the deposition of a high-ranking executive (or "apex witness"). *Mallinckrodt ARD*, 2020 WL 1675593, at *2; *Full Circle*, 2022 WL 16646418, at *4 ("Under the apex doctrine, the party seeking to avoid discovery bears the burden of showing good cause exists to prevent the discovery") (internal citations omitted). Instead, it is up to defendants to show that the apex witness lacks unique personal knowledge of issues related to the parties' claims or defenses. *See, e.g., Boyd*, 2022 WL 2865881, at *5.

"[S]worn answers to interrogatories are an appropriate means of determining whether a high-ra[n]king public official sued in his individual capacity has personal knowledge of facts relating to a Plaintiff's allegations." *Epps v. Dart*, No. 22 C 2393, 2022 WL 17251279, at *4 (N.D.Ill. Nov. 28, 2022). Accordingly, parties seeking to block the deposition of a public official have met their burden of proof by providing interrogatory answers or sworn statements from the public official attesting to their lack of unique or personal knowledge of a plaintiff's allegations. *See, e.g., Little v. JB Pritzker for Governor*, No. 18 C 6954, 2020 WL 868528, at *3 (N.D.Ill.

4

Feb. 21, 2020) (barring governor's deposition where his sworn declaration made it clear that he had no substantive knowledge of plaintiffs' employment conditions, much less a unique understanding of events); *Bless v. Cook Cnty. Sheriff's Off.*, No. 13 C 4271, 2017 WL 1344522, at *2-4 (N.D.Ill. Apr. 12, 2017) (barring defendant sheriff's deposition after finding in reliance on his interrogatory answers that he lacked personal knowledge of the issues in the case); *Bless*, 9 F.4th at 571 ("Although Bless alleges that he told Sheriff Dart about his 2008 accident, his positions as an attorney and County Commissioner, and his affiliation with the Republican Party, Sheriff Dart responded to Bless's interrogatories that he has 'no recollection' of these events. It is hard to see what more could be gained from a deposition, and the court did not abuse its discretion in refusing to compel [one]"); *cf. Bagley v. Blagojevich*, No. 05-3156, 2007 WL 951921, at *3 (C.D.Ill. Mar. 28, 2007) (allowing governor's deposition where "the State Defendants have not produced any evidence, such as an affidavit, to establish that the Governor lacks personal knowledge that relates to Plaintiffs' claims.").

 Courts also consider: (1) whether the party seeking discovery has first tried to obtain information from the public official in question through interrogatories; (2) whether the information can be garnered from other witnesses; and (3) whether the party opposing discovery has shown that the deposition would impose a hardship in light of the officer's other duties. *Little*, 2020 WL 868528, at *1; *Nucap Indus. Inc. v. Robert Bosch LLC*, No. 15-cv-2207, 2017 WL 6059770, at *2 (N.D.Ill. Dec. 7, 2017); *see also Olivieri*, 122 F.3d at 409-10 (holding that the district court did not abuse its discretion in prohibiting the deposition of defendant police superintendent until plaintiff had served defendant with "written interrogatories the answers to which would indicate whether deposing the defendant would serve a useful purpose."); *Chicago*

*Reader*, *Inc. v. Sheahan*, 192 F.R.D. 586, 587 (N.D.Ill. 2000) (quashing notice for defendant sheriff's deposition pending his response to interrogatories).

### III. ANALYSIS

In their motion for a protective order, defendants assert that plaintiff's attempt to take Kaegi's deposition "has no basis in fact or law" because: (1) written discovery has shown that Kaegi does not possess any unique or specific knowledge regarding the elimination of plaintiff's position; (2) the information that plaintiff seeks from Kaegi can be obtained from the individuals whom defendants have identified as the actual decisionmakers; and (3) the information that plaintiff seeks from Kaegi regarding the Assessor's Office's decision-making process is arguably privileged and not relevant to the parties' claims and defenses. (Dckt. #75 at 1-2). The Court disagrees with each of these assertions.

### A. Defendants have failed to meet their burden of showing that Kaegi lacks unique or specific knowledge of matters related to the parties' claims and defenses.

Defendants support their assertion that Kaegi lacks unique or specific knowledge regarding the termination of plaintiff's employment with repeated citation to the answers that they submitted in response to the interrogatories that were served on Kaegi. (*See* Dckt. #75 at 5, 7, 8, 10; Dckt. #82 at 3, 5, 9). However, as plaintiff pointed out in her response, the interrogatory answers submitted by defendants are *not* Kaegi's because he neither answered the interrogatories nor verified them. (*See* Dckt. #75-2 (interrogatory answers) at 4, 11). Instead, the interrogatories were answered and verified by Susan Garza Resnick, the Chief Deputy of the Assessor's Office. (*Id.*; Dckt. #82 at 5). According to defendants, Kaegi did not answer his own interrogatories because "he did not have any information to provide in response to them." (Dckt. #82 at 5).

Defendants further assert that their manner of answering interrogatories "is perfectly allowable" under the Federal Rules of Civil Procedure. (*Id*). Not so. As explained below, defendants' approach is contrary to the express terms of Rule 33 and all of the case law that has construed it.

The requirements of Rule 33 are unequivocal: "[t]he interrogatories *must* be answered . . . by the party to whom they are directed." Fed.R.Civ.P. 33(b)(1) (emphasis added); *Epps*, 2022 WL 17251279, at *3; *In re Asbestos Prod. Liab. Litig. (No. VI)*, No. 08-90234, 2012 WL 5839023, at *8 (E.D.Pa. Nov. 16, 2012).[2] This requirement applies even where – as here – a party claims to lack the information sought by the interrogatories. Thus, "[a] party answering interrogatories cannot limit his answers to matters within his own knowledge and ignore information reasonably available to him or under his control." *AECOM Energy & Constr., Inc. v. Ripley*, No. CV175398RSWLSSX, 2018 WL 4705914, at *3 (C.D.Cal. Apr. 26, 2018). Instead, "the answering party is required to give the information available to him, if any, through his attorney, investigators employed by him or on his behalf, or other agents or representatives, whether personally known to the answering party or not." *Noble v. Gonzalez*, No. 1:07-cv-01111-LJO, 2011 WL 2118746, at *6 (E.D.Cal. May 27, 2011); *Luster v. Ill. Dept. of Corrections*, 652 F.3d 726, 731 n.2 (7th Cir. 2011) (party must provide responsive information in interrogatory answer even if he lacks personal knowledge of the information). Even if a party is unable to supply the requested information after engaging in these efforts, "the party may not simply refuse to answer, but must state under oath that he is unable to provide the information

---

[2] Rule 33(b)(1)(B), which allows for interrogatories served on a party that is "a public or private corporation, a partnership, an association, or a governmental agency" to be answered "by any officer or agent," does not apply here because Kaegi is an individual who is sued in his individual capacity. *See Epps*, 2022 WL 17251279, at *3 ("[T]he text of Rule 33 is clear that a corporation or other listed entity may have an officer or agent sign on its behalf, but that option is not available for a party who is an individual.").

7

and set forth the efforts he used to obtain the information." *Hansel v. Shell Oil Corp.*, 169 F.R.D. 303, 305 (E.D.Pa. 1996) (internal quotation marks omitted); *AECOM Energy*, 2018 WL 4705914, at *3; *Noble*, 2011 WL 2118746, at *6.

Furthermore, Rule 33's requirements that an individual party sign and verify their own interrogatory answers are "among the simplest of all the Rules of Procedure" and they "are *mandatory*, not optional." *Saria v. Massachusetts Mut. Life Ins. Co.*, 228 F.R.D. 536, 540 (S.D.W.Va. 2005) (emphasis in original); *Epps*, 2022 WL 17251279, at *4 (rejecting defendant sheriff's argument that Rule 33 authorized his deputy to sign interrogatories on his behalf); *Walls v. Paulson*, 250 F.R.D. 48, 52 (D.D.C. 2008) (party who failed to sign her interrogatory answers in violation of Rule 33 was subject to sanctions). "Requiring a party to sign interrogatory responses under oath serves the critical purpose of ensuring that the responding party attests to the truth of the responses." *Inventus Power v. Shenzhen Ace Battery*, 339 F.R.D. 487, 496 (N.D.Ill. 2021) (internal quotation marks omitted). Interrogatory responses that are unsigned and unverified by the party upon whom they were served are fatally flawed and "'do not qualify as answers to interrogatories.'" *Twyman v. S&M Auto Brokers*, No. 16 C 4182, 2016 WL 608237, at *4 (N.D.Ill. Oct. 18, 2016), *quoting Bardwell v. K&R Delivery, Inc.*, No. 86 C 5731, 1987 WL 28261, at *1 (N.D.Ill. Dec. 14, 1987). Consequently, by delegating to his Chief Deputy Garza Resnick the duty to answer, sign, and verify the interrogatories served upon him, Kaegi has violated Rule 33[3] and the responses that Garza Resnick signed and verified are *not* Kaegi's interrogatory answers.

---

[3] The one case cited by defendants is inapposite. (*See* Dckt. #82 at 5 (citing *Viehweg v. Sirius XM Radio, Inc.*, No. 17-cv-3140, 2018 WL 3954845 (C.D.Ill. Aug. 17, 2018)). In *Viehweg*, the issue concerned interrogatories issued to defendant Sirius XM Radio, Inc. (a corporation), and the court held that a single sworn verification by a Sirius representative for all interrogatory answers was sufficient to satisfy Rule 33. *Viehweg*, 2018 WL 3954845, at *2. As stated above, the signature requirement for corporate parties is governed by a different provision (Rule 33(b)(1)(B)) than that which governs the signature

8

The responses are flawed for other reasons as well. In addition to being larded up with groundless objections[4] and implausible answers,[5] the document signed by Garza Resnick improperly fails to respond (in whole or in part) to several interrogatories. For example, interrogatory number 8 calls for Kaegi to identify "the individual(s) that made the decision(s) to terminate any employees of the Cook County Assessor's Office on December 3, 2018." In response to this interrogatory, (Dckt. #75-2 at 6), Garza Resnick refused to identify the decision-makers for any terminated employees other than plaintiff on the ground that the information was not related to plaintiff's claims. This objection ignores plaintiff's allegation that she and the other Assessor's Office employees who were terminated on December 3, 2018, were victims of defendants' policy to terminate employees based on their political speech and association with former assessor Berrios. (Dckt. #51 at ¶¶54-57).

Defendants cannot avoid discovery on subjects that are related to plaintiff's claims "through an overly narrow construction of what they deem to be the issues in this case," *Full Circle*, 2022 WL 16646418, at *4, and plaintiff is not required to accept defendants' explanation for her termination at face value. *Sronkoski v. Schaumburg Sch. Dist., No. 54*, No. 08 C 721,

---

requirements for parties who are individuals (Rule 33(b)(1)(A)). Thus, *Viehweg* does not support defendants' contention that it was appropriate for Garza Resnick to verify Kaegi's interrogatory answers.

[4] For example, the responses object that terms used within the interrogatories – such as "suggested," "determining," "laid off," and "terminate" – are vague when the meaning of the terms as used in the context of this wrongful termination lawsuit is clear. (*See* Dckt. #75-2 at 5-7). The responses also object to interrogatory number 13, which seeks to have Kaegi "[i]dentify with factual specificity the basis for Plaintiff's termination," on the ground that "it seeks information which Plaintiff has equal or greater access than the Defendant." (*Id.* at 7). This is truly puzzling. Plaintiff did not terminate herself and the notion that she "has equal or greater access" to the reasons for her termination as the defendants who terminated her defies common sense. (*Id.* at 7).

[5] For example, interrogatory number 2 calls for the identification of all individuals who have knowledge of the allegations of plaintiff's complaint. However, the response fails to list Kaegi despite the fact that he most certainly has knowledge of a number of the allegations, including those concerning his election as Assessor, his replacement of Berrios, and his statements about ridding the Assessor's Office of those employees who received their positions through favoritism and nepotism.

2009 WL 1940779, at *3 (N.D.Ill. July 1, 2009). Instead, plaintiff is "entitled to the opportunity, through discovery, to develop the facts that can show the existence of the policies that [she] allege[s] are actionable under *Monell*." *Mann v. City of Chicago*, No. 13-cv-4531, 2017 WL 3970592, at *4 (N.D.Ill. Sept. 8, 2017) (internal quotation marks omitted).[6]

In sum: because defendants have relied solely on the invalid responses to Kaegi's interrogatories to support their assertion that he lacks unique or specific knowledge regarding plaintiff's termination, they have failed to meet their burden of presenting a particular and specific demonstration of fact to support the entry of a protective order barring Kaegi's deposition. *Boyd*, 2022 WL 2865881, at *5; *Full Circle*, 2022 WL 16646418, at *4; *Mallinckrodt ARD*, 2020 WL 1675593, at *2; *see also Bagley*, 2007 WL 951921, at *3 (denying motion to bar the governor's deposition after noting that defendants failed to produce "any evidence, such as an affidavit, to establish that the Governor lacks personal knowledge that relates to Plaintiffs' claims.").

    **B.**    **Kaegi has knowledge that is unlikely to be duplicative of knowledge held by other witnesses.**

Although defendants assert that plaintiff can obtain all the information she seeks from Kaegi from other current or former employees of the Assessor's Office, it appears that Kaegi has some unique knowledge that is related to plaintiff's claims. In particular, it is undisputed that Kaegi was quoted in a January 3, 3019 article asserting that "we've let go of all political appointees who were there exclusively due to patronage and nepotism," and that he stated in his 50 Day Report that "on day one [December 3, 2018], we ended the employment of anyone in the

---

[6] Interrogatory number 18, which calls for Kaegi to identify all of the former Assessor Office employees who purportedly obtained their positions through patronage and nepotism and whom Kaegi was quoted on January 3, 2019 as stating that "we've let go," is similarly related to plaintiff's claims and should have been answered.

assessor's office who received their job purely through favoritism or nepotism." Kaegi would be the best source to ask about the meaning of his own statements and the identity of the terminated employees who he believes received their jobs through favoritism or nepotism. *See Bagley*, 2007 WL 951921, at *3 (allowing deposition of governor who issued a press release and was quoted in the newspaper as taking credit for the decision to eliminate the employment position at issue in the litigation).

The Court also finds that plaintiff is entitled to question Kaegi about his knowledge (or alleged lack thereof) regarding the mass termination of the Assessor's Office employees on December 3, 2018. Although defendants attempt to distance Kaegi from plaintiff's claims by suggesting that he merely "may have been aware of the positions being eliminated in the Assessor's Office upon the installation of the new administration," (Dckt. #75 at 8-9), Kaegi is the top official in the Assessor's Office and it is *his* administration. As plaintiff asserts, it seems implausible that this sort of employee purge would take place on Kaegi's first day as Assessor without his knowledge and direction. One way or another, plaintiff will be granted the opportunity to question Kaegi about this matter.

      **C.**      **The deliberative process privilege does not bar the deposition of Kaegi.**

Defendants assert that any deposition testimony by Kaegi regarding the decision-making process that culminated in the discharge of several employees from the Berrios administration is protected by the deliberative-process privilege. (Dckt. #75 at 9). The Court disagrees for the following reasons.

The deliberative process privilege is a qualified privilege that protects communications that are part of the decision-making process of a governmental agency and applies to the deposition testimony of government employees as well as document production requests.

11

*Sronkoski*, 2009 WL 1940779, at *1; *Anilao v. Spota*, No. CV 10-32, JFB AKT, 2015 WL 5793667, at *18-19 (E.D.N.Y. Sept. 30, 2015). The privilege does not extend to purely factual matters or to testimony addressing an agency's final decision on a policy or its implementation. *Illinois League of Advocs. for the Developmentally, Disabled v. Quinn*, No. 13 C 1300, 2013 WL 4734007, at *4 (N.D.Ill. Sept. 3, 2013). Moreover, even where the privilege applies, it "may be overcome where there is a sufficient showing of a particularized need to outweigh the reasons for confidentiality." *Sronkoski*, 2009 WL 1940779, at *1; *Illinois League*, 2013 WL 4734007, at *2.

The deliberative process privilege does not bar Kaegi's testimony for three reasons.

First, the Court finds persuasive the reasoning of courts that have held that the privilege does not apply where a plaintiff's claims challenge the motive and intent behind the government's action. As the District of Columbia Circuit has recognized:

> The privilege was fashioned in cases where the governmental decisionmaking process is collateral to the plaintiff's suit. . . . If the plaintiff's cause of action is directed at the government's intent, however, it makes no sense to permit the government to use the privilege as a shield. For instance, it seems rather obvious to us that the privilege has no place in a Title VII action or in a constitutional claim for discrimination. . . . The Supreme Court struggled in *Crawford-El* and *Webster* with governmental claims that discovery in such a proceeding should be limited, but no one in any of these cases ever had the temerity to suggest that the privilege applied. The argument is absent in these cases because if either the Constitution or a statute makes the nature of the governmental officials' deliberations *the* issue, the privilege is a nonsequitur. The central purpose of the privilege is to foster government decisionmaking by protecting it from the chill of potential disclosure. . . . If Congress creates a cause of action that deliberately exposes government decisionmaking to the light, the privilege's raison d'être evaporates.

*In re Subpoena Duces Tecum Served on Off. Of Comptroller of Currency*, 145 F.3d 1422, 1424 (D.C.Cir.)., *on reh'g in part*, 156 F.3d 1279 (D.C.Cir. 1998) (emphasis in original; citations omitted); *Landry v. F.D.I.C.*, 204 F.3d 1125, 1136 (D.C.Cir. 2000) (the deliberate process privilege does not apply where "the cause of action is directed at the agency's subjective motivation"); *Glenwood Halsted LLC v. Vill. of Glenwood*, No. 11 C 6772, 2013 WL 140794, at

12

\*3 (N.D.Ill. Jan. 11, 2013) ("[B]ecause Defendants' intent and misconduct are directly at issue, the deliberative process privilege does not apply."); *Lewis v. Phillips*, No. 10-cv-3163, 2012 WL 5499448, at \*2 (C.D.Ill. Nov. 13, 2012) ("District court cases have recognized an exception to the deliberative process privilege where intent is central to proving a claim.") (citing cases); *Anderson v. Cornejo*, No. 97 C 7556, 2001 WL 826878, at \*2 (N.D.Ill. July 20, 2001) (citing cases).

In this case, the Assessor's Office was acting in its capacity as an employer – rather than as a governmental body formulating important public policy – when it terminated plaintiff, and Kaegi will be called upon to testify regarding the motive and intent underlying this "ordinary employment decision" (namely, the termination of plaintiff).[7]  *See, e.g., Deng v. New York State Off. of Mental Health*, No. 13-cv-6801ALCRLE, 2015 WL 7422184, at \*1 (S.D.N.Y. Nov. 18, 2015) (holding that the deliberative process privilege does not apply under these circumstances); *Anilao*, 2015 WL 5793667, at \*20-21 (the deliberative process privilege does not apply to the decision-making process involved in the determination to prosecute plaintiffs who alleged the violation of their constitutional rights and municipal liability under *Monell*); *Holmes v. Hernandez*, 221 F.Supp.3d 1011, 1021-22 (N.D.Ill. 2016) (citing *Anilao*).  Accordingly, the deliberative process privilege does not apply under the circumstances in this case.

Second, even if the deliberative process privilege were applicable, defendants have not satisfied the procedural requirements for asserting it.  In particular:

> the government must submit a formal claim from the appropriate department head, asserting the privilege based on his or her consideration of the circumstances . . . . In that claim, typically an affidavit, the responsible official must demonstrate . . .

---

[7] Defendants' reliance on the decision in *Tumas v. Bd. of Educ. of Lyons Twp. High Sch., Dist. No. 204*, No. 06 C 1943, 2007 WL 2228695 (N.D.Ill. July 31, 2007), is misplaced.  In that case, plaintiff sought discovery of defendants' litigation strategy, including deliberations about settlement, regarding legal claims that had already been filed.  *Id.*, at \*2-3.

13

>precise and certain reasons for preserving the confidentiality of the [testimony] in question and specifically identify and describe the [testimony].

*Illinois League*, 2013 WL 4734007, at *3 (citations and internal quotation marks omitted); *Gudkovich v. City of Chicago*, No. 1:17-cv-8714, 2022 WL 252716, at *10 (N.D.Ill. Jan. 27, 2022) (same). As plaintiff suggests, (Dckt. #78 at 9), defendants have not satisfied these threshold procedural requirements and their claim to apply the privilege fails for this reason as well. See *Gudkovich*, 2022 WL 252716, at *10.[8]

Third, even if the deliberate process privilege applied and defendants had properly asserted it, the Court – consistent with multiple decisions from this District – finds that plaintiff has met her burden of showing a particularized need for Kaegi's testimony regarding the true motive and basis for terminating her and that this need outweighs defendants' asserted need for confidentiality. *See, e.g., Gibbons v. Vill. of Sauk Vill.*, No. 15-cv-4950, 2016 WL 7104255, at *4 (N.D.Ill. Dec. 6, 2016) ("Gibbons has a particularized need for the information because she is alleging that the Village wrongfully retaliated against her, and the Village's motives for terminating her employment are directly at issue."); *Sronkoski,* 2009 WL 1940779, at *3 (finding that plaintiff had a particularized need for materials which may reflect defendant's "true 'motive and basis' for terminating her."); *see also Illinois League*, 2013 WL 4734007, at *3 ("the government's intent, where directly contested, is without question a critical factor to consider when analyzing a litigant's need for withheld documents."); *Gudkovich*, 2022 WL 252716, at *10 (same).

---

[8] Defendants recognize this problem but assert, in reliance on *Tumas*, that they need not satisfy the above procedural requirements. (Dckt. #82 at 6). However, *Tumas* is factually distinguishable. In that case, plaintiff did not object to the manner in which defendants asserted the privilege and the court was able to determine the nature of the information that defendants claimed was privileged based upon its review of the parties' submissions. *Tumas*, 2007 WL 2228695, at *3. Here, plaintiff does object to defendants' manner of proceeding and this Court is unable to determine the nature of the prospective testimony that defendants claim is subject to this privilege.

### D. Defendants have failed to show that Kaegi will experience an undue hardship if he is required to sit for a deposition.

Although courts consider the hardship that a high-ranking executive would experience in light of their other duties if they were forced to sit for a deposition, defendants have barely touched on this factor in their briefs. (*See* Dckt. #75 at 9). By giving such short shrift to this issue, defendants have failed to show that Kaegi will experience an undue hardship if he were to be deposed in this case. *See, e.g., Nucap Indus. Inc.*, 2017 WL 6059770, at *4. This is especially so given that plaintiff has suggested that she will not need an extended amount of time to complete his deposition. (*See* Dckt. #78 at 8). To minimize any inconvenience that a deposition might otherwise create, the Court will limit Kaegi's deposition to no more than three and one-half hours and plaintiff is required to depose Kaegi either remotely or in-person at a location in Chicago's Loop (rather than in Geneva, Illinois as plaintiff's notice of deposition indicates). *See Full Circle*, 2022 WL 16646418, at *5 (limiting apex deposition to three and one-half hours "to ensure that the questioning does not go too far afield"); *Boyd*, 2022 WL 2865881, at *6 (limiting deposition to four hours and requiring it to be conducted remotely).

### CONCLUSION

For the foregoing reasons, defendants' motion for a protective order, (Dckt. #75), is denied. Defendant Kaegi is ordered to make himself available for deposition on or before January 5, 2023, under the conditions specified in this opinion.

**ENTERED:** December 15, 2022

Jeffrey I. Cummings
United States Magistrate Judge